**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JOSEPH POST, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | Case No. _____ |
| v. ) ) | JURY TRIAL DEMANDED |
| AQUAVENTURE HOLDINGS LIMITED, DOUGLAS BROWN, ANTHONY IBARGUEN, DEBRA COY, HUGH EVANS, PAUL HANRAHAN, DAVID LINCOLN, CYRIL MEDUÑA, RICHARD F. REILLY, and TIMOTHY WHALL, ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action stems from a proposed transaction announced on December 23, 2019 (the "Proposed Transaction"), pursuant to which AquaVenture Holdings Limited ("AquaVenture" or the "Company") will be acquired by Culligan International Company ("Parent"), a Delaware corporation, and Amberjack Merger Sub Limited ("Merger Sub," and together with Parent, "Culligan").

2.      On December 23, 2019, AquaVenture's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Culligan. Pursuant to the terms of the Merger Agreement, AquaVenture's stockholders will receive $27.10 in cash for each share of AquaVenture common

stock they own.

3.     On January 27, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of AquaVenture common stock.

9.     Defendant AquaVenture is a British Virgin Islands corporation and a party to the Merger Agreement.  AquaVenture's common stock is traded on the New York Stock Exchange

under the ticker symbol "WAAS."

10. Defendant Douglas Brown is Founder and Chairman of the Board of the Company.

11. Defendant Anthony Ibarguen is Chief Executive Officer, President, and a director of the Company.

12. Defendant Debra Coy is a director of the Company.

13. Defendant Hugh Evans is a director of the Company.

14. Defendant Paul Hanrahan is a director of the Company.

15. Defendant David Lincoln is a director of the Company.

16. Defendant Cyril Meduña is a director of the Company.

17. Defendant Richard F. Reilly is a director of the Company.

18. Defendant Timothy Whall is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

21. Defendant Merger Sub is a business company incorporated under the laws of the British Virgin Islands, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of AquaVenture (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of December 20, 2019, there were approximately 31,774,577 shares of AquaVenture common stock

outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

29. AquaVenture is a multinational provider of WAAS solutions that provide customers a reliable and cost-effective source of clean drinking and processed water primarily under long-term contracts that minimize capital investment by the customer.

30. The Company is comprised of two operating platforms: (i) Quench, a leading provider of filtered water systems and related services with over 155,000 units installed at institutional and commercial customer locations across the United States and Canada; and (ii) Seven Seas Water, a multinational provider of desalination and wastewater treatment solutions, providing more than 8.5 billion gallons of potable, high-purity industrial grade, and ultra-pure water per year to governmental, municipal, industrial, and hospitality customers.

31. On December 23, 2019, AquaVenture's Board caused the Company to enter into the Merger Agreement with Culligan.

32. Pursuant to the terms of the Merger Agreement, AquaVenture's stockholders will receive $27.10 in cash for each share of AquaVenture common stock they own.

33. According to the press release announcing the Proposed Transaction:

> Culligan, the innovative brand in consumer-focused and sustainable water solutions and services, and AquaVenture Holdings Limited (NYSE: WAAS) ("AquaVenture"), a leading multinational developer and provider of sustainable Water-as-a-Service® (WAAS®) solutions, today announced they have entered into a definitive agreement under which Culligan will acquire AquaVenture for $27.10 per share in an all-cash transaction valued at approximately $1.1 billion, including AquaVenture's net debt. . . .
>
> Transaction Details
>
> Under the terms of the agreement, AquaVenture shareholders will receive $27.10 in cash for each ordinary share of AquaVenture they own. The all-cash purchase price represents a premium of approximately 25% to AquaVenture's closing share price on December 20, 2019, and a premium of approximately 33% to AquaVenture's 90-day volume weighted average share price.
>
> Culligan has fully committed debt financing to support the transaction, along with equity financing provided by investment funds affiliated with Advent International. There are no financing contingencies contemplated under the terms of the merger agreement.
>
> The transaction has been unanimously approved by AquaVenture's Board of Directors and is expected to close in early April 2020, subject to AquaVenture shareholder approval, regulatory approvals and the satisfaction of other customary

closing conditions.

Upon the completion of the transaction, AquaVenture will become a privately held company, and shares of its common stock will no longer be listed on any public market.

Citi and UBS are serving as financial advisors to AquaVenture. Goodwin Procter LLP is serving as legal advisor to AquaVenture, and Weil, Gotshal & Manges LLP is serving as legal advisor to Culligan.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

34. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

35. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

36. First, the Proxy Statement omits material information regarding the Company's financial projections.

37. The Proxy Statement fails to disclose: (i) for each set of projections, all line items used to calculate (a) Adjusted EBITDA and (b) Unlevered Free Cash Flow (as calculated by both Citi and UBS); (ii) a reconciliation of all non-GAAP to GAAP metrics; and (iii) the projections for each of the Quench and Seven Seas Water businesses and all underlying line items.

38. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

39. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Citigroup Global Markets Inc. ("Citi") and UBS Securities LLC ("UBS").

40. With respect to Citi's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal values for AquaVenture; (iii) the individual inputs and assumptions underlying the ranges of terminal growth rates and the discount rates ranging from 7.5% to 8.6%; (iv) AquaVenture's net debt balance; and (v) the number of AquaVenture ordinary shares outstanding on a fully diluted basis.

41. With respect to Citi's analysis of price targets, the Proxy Statement fails to disclose: (i) the price targets observed by Citi in the analysis; and (ii) the sources thereof.

42. With respect to Citi's Illustrative Discounted Cash Flow Impact of Acquisitions analysis, the Proxy Statement fails to disclose the projections and assumptions provided by management as used by Citi in the analysis.

43. With respect to UBS's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates ranging between 8.5% and 9.5%; (iii) the terminal values for the Company; and (iv) the net debt and diluted share information used by UBS in the analysis.

44. With respect to UBS's analysis of price targets, the Proxy Statement fails to disclose: (i) the price targets observed by UBS in the analysis; and (ii) the sources thereof.

45. With respect to UBS's additional discounted cash flow analyses, the Proxy Statement fails to disclose: (i) the five-year standalone projections for each of the Quench and Seven Seas Water businesses and all underlying line items; and (ii) the individual inputs and assumptions underlying the ranges of perpetuity growth rates of 3.5% to 4.5% and 2.5% to 3.5%.

46. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.

47.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger; (iii) Recommendation of the Company's Board of Directors; (iv) Opinion of Citigroup Global Markets Inc.; (v) Opinion of UBS Securities LLC; and (vi) Projected Financial Information.

48.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and AquaVenture

49.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. AquaVenture is liable as the issuer of these statements.

51.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

52.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on

the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

54. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

55. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Culligan

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants and Culligan acted as controlling persons of AquaVenture within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of AquaVenture and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

59. Each of the Individual Defendants and Culligan was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

60. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

61. By virtue of the foregoing, the Individual Defendants and Culligan violated Section 20(a) of the 1934 Act.

62. As set forth above, the Individual Defendants and Culligan had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

      D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

      E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

      F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: February 4, 2020          **RIGRODSKY & LONG, P.A.**

                                   By:  */s/ Gina M. Serra*
                                         Seth D. Rigrodsky (#3147)
                                         Brian D. Long (#4347)
                                         Gina M. Serra (#5387)

**OF COUNSEL:**                     300 Delaware Avenue, Suite 1220
                                         Wilmington, DE 19801
**RM LAW, P.C.**                      Telephone: (302) 295-5310
Richard A. Maniskas              Facsimile: (302) 654-7530
1055 Westlakes Drive, Suite 300    Email: sdr@rl-legal.com
Berwyn, PA 19312                  Email: bdl@rl-legal.com
Telephone: (484) 324-6800         Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com           *Attorneys for Plaintiff*